**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**Elkins Division**

<div style="border">
ELECTRONICALLY
FILED
Mar 21 2018
U.S. DISTRICT COURT
Northern District of WV
</div>

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br> 378 Main Ave.<br> Tucson, AZ 85702<br><br> Plaintiff,<br><br> v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE,<br> 1849 C Street NW<br> Washington, DC 20240,<br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: <u>2:18-cv-30  (Bailey)</u>

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      The Center for Biological Diversity (Center) brings this action under the Freedom of Information Act, 5 U.S.C. § 552, as amended (FOIA). Defendant, the United States Fish and Wildlife Service (Service) failed to make records available to the Center in response to requests submitted on August 23, 2017, related to the Berwind Mine in McDowell County, West Virginia, and September 19, 2017, related to Endangered Species Act consultations and other environmental reviews for the Big Sandy crayfish (*Cambarus callainus*) and Guyandotte River crayfish (*Cambarus veteranus*) (collectively, Crayfish).

2.      The Center seeks declaratory relief establishing that the Service has violated FOIA. The Center also seeks injunctive relief ordering the Service to provide the Center with all responsive records without further delay.

1

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) (FOIA) and 28 U.S.C. § 1331 (federal question).

4.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

5.      Declaratory relief is appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201. Injunctive relief is appropriate under 5 U.S.C. §552(a)(4)(B) 28 U.S.C. § 2202.

## PARTIES

6.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national nonprofit conservation organization that works to protect native species and their habitats, including from adverse impacts of mine permitting and other agency actions that may affect them. The Center has more than 63,000 active members across the country and maintains offices throughout the United States. The Center brings this action on behalf of itself and its members. The Center and its members are harmed by the Service's violations of FOIA because such violations preclude the Center from gaining a full understanding of the harmful effects on species like the Crayfish, and their habitat, from mine permitting and other federal actions, as well as understanding the agency's approach to protecting the Crayfish pursuant to the Endangered Species Act. The Service's failure to comply with FOIA harms the Center's ability to provide full, accurate, and current information to the public on a matter of public interest. Absent this information, the Center cannot advance its mission to protect native species and their habitat.

7.      Defendant UNITED STATES FISH AND WILDLIFE SERVICE is an agency of the United States government within the Department of the Interior. The Service is in possession

and control of the records the Center seeks, and accordingly, is subject to FOIA pursuant to 5 U.S.C. § 552(f) and is responsible for fulfilling the Center's FOIA request to it.

## STATUTORY BACKGROUND

8.      FOIA requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions applies. 5 U.S.C. § 552.

9.      FOIA places the burden on the agency to show that it may withhold responsive records from a requester. *Id.* § 552(a)(4)(B).

10.      Within 20 working days of receiving a request, an agency must determine if it will release requested records and notify the requester of its determination and the reasons therefore, the right to seek assistance from the FOIA Public Liaison, and the right to appeal an adverse agency determination. *Id.* § 552(a)(6)(A)(i).

11.      In "unusual circumstances," an agency may extend the time to make a determination by no more than 10 additional working days, but it must provide written notice to the requester setting forth the unusual circumstances for the extension and "the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i). If the agency provides written notice that the request cannot be processed with the specified time limit, the agency shall provide "an opportunity to limit the scope of the request so that it may be processed within [the statutory] time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request" and "shall make available its FOIA Public Liaison" to "assist in the resolution of any disputes between the requester and the agency." *Id.* § 552(a)(6)(B)(ii).

12.      FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *Id.* § 552(a)(3)(C)-(D).

13.     FOIA requires federal agencies to promptly disclose requested records. *Id.* § 552(a)(3)(A), (a)(6)(C)(i).

14.     In certain limited instances, records may be withheld pursuant to nine specific exemptions. *Id.* § 552(b). These exemptions must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy.

15.     FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

### STATEMENT OF FACTS

### Background to the FOIA Requests

16.     The Big Sandy crayfish and Guyandotte River crayfish are two closely related species of freshwater crayfish found in central Appalachia. The Crayfish grow to about two inches in length and have reddish brown bodies with highlights of crimson red, and aqua, blue-green, or blue-grey claws and legs. Crayfish play an important role in their stream environments, keeping water clean by recycling animal and plant matter and serving as food for other wildlife, including sport fish.

17.     In 2016, in response to a 2010 petition from the Center, the Service listed the Big Sandy Crayfish as threatened and the Guyandotte River crayfish as endangered under the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, because land-disturbing activities including coal mining, commercial timber operations, road construction, and oil and gas development were degrading their freshwater stream habitat with pollution, erosion, and siltation (a process by which clean waterways become choked with silt particles). *Threatened Species Status for the Big Sandy Crayfish and Endangered Species Status for the Guyandotte River Crayfish*, 81 Fed. Reg.

20450 (Apr. 7, 2016). Because of historical and ongoing negative impacts to their habitat, the Big Sandy crayfish is found in six isolated subpopulations scattered across Virginia, West Virginia, and Kentucky. The Guyandotte River crayfish is known from only two sites in West Virginia.

18.     Under Section 7(a)(2) of the Endangered Species Act, each federal agency has a substantive duty to ensure that any action it authorizes "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of the species' critical habitat. 16 U.S.C. § 1536(a)(2). Section 7(a)(2) imposes a separate, procedural duty on federal agencies to consult with the expert wildlife agencies—in the case of the Crayfish, the Service—regarding the impacts that federal actions will have on endangered and threatened species. *Id.* Federal agencies must review their actions "at the earliest possible time," and if the action "may affect" any listed species or critical habitat, they must engage in formal consultation with the Service. 50 C.F.R. §§ 402.13-402.14. After considering the impacts to species, the Service concludes consultation by issuing a biological opinion (BiOp) stating whether the action will jeopardize the continued existence of endangered or threatened species or adversely modify their critical habitat. *Id.* § 402.14(g)(4).

19.     In 1996, following consultation with the Office of Surface Mining Reclamation and Enforcement (OSMRE), the Service issued a programmatic BiOp that covered all existing and future impacts to species associated with all surface coal mining and reclamation operations under state and federal regulatory programs adopted under the Surface Mining Control and Reclamation Act of 1977 (SMCRA). This 1996 BiOp provides a framework of requirements for OSMRE to comply with the Endangered Species Act when implementing SMCRA. One of these requirements is to "implement and require compliance with any species-specific protective

measures developed by the Service field office and the regulatory authority (with the involvement, as appropriate, of the permittee and OSMRE)."

20.     OSMRE Regulations also require the preparation of a protection and enhancement plan ("PEP") for each project, which must include "a description of how . . . the operator will minimize disturbances and adverse impacts on fish and wildlife and related environmental values, including compliance with the Endangered Species Act, during the surface coal mining and reclamation operations." 30 C.F.R. § 780.16(b).

21.     Coal mining and other land-disturbing activities continue in the habitat of the Crayfish, and the impacts of those activities on the Crayfish are required to be analyzed through formal consultation with the Service or through the procedures set out in the 1996 BiOp.

22.     For example, the initial construction of the Berwind Mine, located on the border of Virginia and West Virginia, commenced in 2017. Although the Service issued a statement that the mine complied with the 1996 BiOp by virtue of its PEP, it has not made its analysis of the PEP for Berwind Mine publicly accessible for review. After the Service concurred with the PEP, the state then issued crayfish guidance that should have been included in the PEP and reviewed by the Service before concurrence. The public has no way of knowing if the Service reviewed the crayfish guidance.

23.     The ability to review the documents that analyze impacts of these activities on the Crayfish is germane to the Center's mission to conserve endangered and threatened species.

**Berwind Mine Request (FWS-2017-01209)**

24.     On August 23, 2017, the Center submitted to the Service's West Virginia Field Office a FOIA request for all records mentioning, including, or referencing the Berwind Mine in McDowell County, West Virginia, including but not limited to records of communication

between the Service, West Virginia Department of Environmental Protection, West Virginia Division of Natural Resources, and the OSMRE (hereinafter, Berwind Mine Request).

25.     On August 24, 2017, the FOIA officer at the Service's headquarters notified the Center that it received the Berwind Mine Request and forwarded it to the Region 5 Office for processing. That same day, the Service's Region 5 office emailed the Center acknowledging receipt of the Berwind Mine Request and advising that the request would be handled when the Region 4 FOIA coordinator returned to the office. At that time, the Service failed to provide the Center with a tracking number for the Berwind Mine Request.

26.     Sixty-six work days elapsed with no further response.

27.     On November 30, 2017, the Center sent the Service a letter providing notice that the Service had violated FOIA's deadline to provide a determination on the Center's request within 20 business days, or September 22, 2017. The Center requested a determination and an estimated date of completion, and offered assistance in fulfilling the request.

28.     On December 1, 2017, the Service's Region 5 FOIA coordinator emailed the Center acknowledging the Berwind Mine Request, assigning it FOIA tracking number FWS-2017-01209 and granting the Center's requested fee waiver. It classified the request as a "normal" processing track request that could be processed in 6 to 20 workdays. The email provided an estimate of a partial release of records no later than January 31, 2018.

29.     To date, the Service has not released any records to the Center in connection with its Berwind Mine Request, nor has it contacted the Center regarding the request.

30.     The Service did not notify the Center of a determination that described the scope of the records it intends to produce or withhold and the reasons for withholding any records or

inform the Center that it may appeal any specific adverse determination within the relevant time periods in 5 U.S.C. § 552(a)(6)(a)(i) or 5 U.S.C. § 552(a)(6)(B).

31.    The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

32.    The Service has no lawful basis under FOIA for its delay or to withhold or redact the records the Center requested in its Berwind Mine Request.

33.    The Center has been required to expend resources to prosecute this action.

### Crayfish Request (FWS-2017-01291)

34.    On September 19, 2017, the Center submitted to the Service's West Virginia Field Office a FOIA request for all records mentioning, including, or referencing: (1) the Protection and Enhancement Plan (PEP) for the Big Sandy crayfish and Guyandotte River crayfish, including a copy of the PEP itself; (2) all Endangered Species Act Section 7, 16 U.S.C. § 1536, consultations for the Crayfish; (3) communications generated in connection with Endangered Species Act Section 9, *Id.* § 1538, take of the Crayfish; and (4) coal mining activities that rely on the 1996 Biological Opinion "Surface Coal Mining and Reclamation Operations Under the Surface Mining Control and Reclamation Act of 1977," from May 1, 2016 to the date of the requested search (hereinafter, Crayfish Request).

35.    That same day, the Service emailed the Center acknowledging receipt of the Crayfish Request, assigning it tracking number FWS-2017-01291, and promising a formal acknowledgement letter promptly.

36.    On September 29, 2017, the Service called the Center to clarify the scope of the Crayfish Request.

37.     On October 2, 2017, the Center sent the Service an email to further clarify the scope of the Crayfish Request. For Item 1, the Center clarified that it meant to request the PEP for the Berwind Mine, as well as any other documents discussing mitigation or avoidance measures for the Crayfish for any other mines. For Item 2, the Center clarified that it did not want to change the item and that it would like records from the Advanced Tracking and Integrated Logging System (TAILS), a program that keeps records of consultations between the Service and other agencies, as part of the records requested. The Center also encouraged the Service to release records on a rolling basis. For Item 3, the Center clarified that it stood by its request but recognized that the Service does not have to produce the same documents twice. The Center further clarified that it still wanted to know if there are any documents discussing take by private companies, the state, or others. Finally, the Center clarified that Item 4 could be limited to just projects that impact the Crayfish.

38.     More than 83 work days elapsed without further correspondence or a determination from the Service.

39.     On February 2, 2018, the Center sent the Service a letter providing notice that the Service had violated the statutory deadline to provide a determination on the Crayfish Request within 20 business days, or October 18, 2017. The Center requested a determination and an estimated date of completion, and offered assistance in fulfilling the request

40.     To date, the Service has not released any records to the Center in connection with its Crayfish Request, nor has it contacted the Center regarding the request.

41.     The Service did not notify the Center of a determination that described the scope of the records it intends to produce or withhold and the reasons for withholding any records or

inform the Center that it may appeal any specific adverse determination within the relevant time periods in 5 U.S.C. § 552(a)(6)(a)(i) or 5 U.S.C. § 552(a)(6)(B).

42.     The Center has exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

43.     The Service has no lawful basis under FOIA for its delay or to withhold or redact the records the Center requested in its Crayfish Request.

44.     The Center has been required to expend resources to prosecute this action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**The Service's Violation of the Freedom of Information Act, 5 U.S.C. § 552, Relating to the Berwind Mine Request (FWS-2017-01209)**

45.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

46.     The Center properly requested records within the control of the Service through its August 23, 2017 FOIA request to the agency (Berwind Mine Request, FWS-2017-01209).

47.     The Service's failure to make a determination on the Center's FOIA request or make available the records the Center specifically requested within the time frames mandated by the statute violates FOIA, 5 U.S.C. § 552, including but not limited to the duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt records, and to not withhold responsive records.

48.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in information requests to the Service in the foreseeable future.

49.     The Center's organizational activities will be adversely affected if the Service is allowed to continue violating FOIA's disclosure provisions.

10

50.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

51.     The Center is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA.  5 U.S.C. § 552(a)(4)(E).

<div align="center">

**SECOND CLAIM FOR RELIEF**
**The Service's Violation of the Freedom of Information Act, 5 U.S.C. § 552,**
**Relating to the Crayfish Request (FWS-2017-01291)**

</div>

52.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

53.     The Center properly requested records within the control of the Service through its September 19, 2017 FOIA request to the agency (Crayfish Request, FWS-2017-01291).

54.     The Service's failure to make a determination on the Center's FOIA request or make available the records the Center specifically requested within the time frames mandated by the statute violates FOIA, 5 U.S.C. § 552, including but not limited to the duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt records, and to not withhold responsive records.

55.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in information requests to the Service in the foreseeable future.

56.     The Center's organizational activities will be adversely affected if the Service is allowed to continue violating FOIA's disclosure provisions.

57.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Service will continue to violate the Center's rights to receive public records under FOIA.

58.     The Center is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA.  5 U.S.C. § 552(a)(4)(E).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(1)     Declare that Defendant violated the Freedom of Information Act by failing to lawfully satisfy Plaintiff's August 23, 2018 and September 19, 2017 FOIA requests;

(2)                                         Order Defendant to search for any and all responsive records to Plaintiff's August 23, 2018 and September 19, 2017 FOIA requests using search methods reasonably likely to lead to discovery of all responsive records;

(3)     Order Defendant to promptly produce, by date certain, any and all non-exempt responsive records, including any reasonably segregable portions of the records that are non-exempt, and a *Vaughn* index of any responsive records withheld under a claim of exemption, at no cost to Plaintiff;

(4)     Enjoin Defendant from continuing to withhold any and all non-exempt responsive records;

(5)     Retain jurisdiction over this action to ensure the processing of Plaintiff's FOIA requests and that no agency records are improperly withheld;

(6)     Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

(7)    Grant any further relief as the Court may deem just and proper.

Dated this 21st day of March, 2018.


Respectfully submitted,


/s/ J. Michael Becher
J. Michael Becher (W.Va. Bar No. 10588)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
304-382-4798
mbecher@appalmad.org


*Counsel for Plaintiff*